IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No.: 94 CR 787-1 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| RAYNARD McDOWELL, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Court of Appeals vacated this court's order summarily denying Raynard McDowell's motion to compel the government to move to reduce his sentence pursuant to Fed. R. Crim. P. 35(b). *United States v. McDowell*, No. 04-4079, 149 Fed. Appx. 508, 513 (7th Cir. Aug. 18, 2005) (unpublished order). The case was remanded for determination of whether McDowell's allegations – that in 1998, an Assistant United States Attorney ("AUSA") for the Central District of Illinois unconditionally promised to file a Rule 35(b) motion to reduce his sentence in this case – are "untrue or inaccurate," or whether "the government [had] a sound basis for its decision not to file a Rule 35(b) motion." *Id.* at 512.

Following remand, this court initially ordered the government to file a written response to McDowell's motion to compel. Minute Order, Dkt. No. 106 (Nov. 15, 2005). After reviewing the government's response, the court set an evidentiary hearing because of the need to resolve factual and credibility issues. Minute Order, Dkt. No. 109 (Jan. 6, 2006). The court also appointed an experienced Deputy Federal Defender to represent McDowell, and then postponed the hearing for a month in order to give appointed counsel an opportunity to prepare for the hearing. Minute Order, Dkt. No. 112 (Jan. 27, 2006). Several weeks later, a privately retained attorney appeared for McDowell, and the Deputy Federal Defender withdrew. Minute Order, Dkt. No. 120 (Feb. 7, 2006).

A hearing was held on March 20, 2006. By affidavit, counsel for the parties submitted the direct testimony of McDowell, Special Agent Jay Bump of the Drug Enforcement Administration, AUSAs Richard Westphal and Donald Allegro of the Central District of Illinois, and AUSA Morris Pasqual of the Northern District of Illinois. March 20, 2006 Hearing Transcript ("Tr.") at 3:15-4:25. The court reviewed the affidavits, and then the witnesses were called for cross-examination in open court. Numerous exhibits were received in evidence.

At the conclusion of the lengthy hearing, transcripts of the proceedings were ordered for the court and counsel; defense counsel requested and was granted a post-hearing briefing schedule. *Id.* at 148:12-149:6. The court has reviewed all testimony, exhibits, the parties' post-hearing submissions, and the extensive record in this 12-year-old case. This memorandum opinion and order constitutes its findings and conclusions, in compliance with the remand order.

# DISCUSSION

## I. The Alleged Rule 35(b) Promise

In his 28-page *pro se* motion to compel, McDowell alleges that AUSA Westphal and Special Agent Bump verbally promised to file a Rule 35(b) motion to reduce his sentence in this case because of his "great job" in testifying before a federal grand jury in Peoria in 1998. Motion to Compel, Government Exhibit ("GX") 25 at 6. McDowell's grand jury testimony included several general statements about his drug dealing with Cornelius Lee from the late 1980's until 1994. *Id.*; McDowell's October 12, 1998 Testimony, GX 12 at 6:1-9, 13:15-17.

McDowell characterizes his grand jury testimony and his cooperation in the *Lee* case as "valuable" and the "foundation" for Lee's subsequent indictment. GX 25 at 6, 21, 26. He argues that the government acted arbitrarily and in bad faith by not filing a Rule 35(b) motion as promised. *Id.* at 13-27. There is no credible evidence supporting McDowell's assertion that he was unconditionally promised a Rule 35(b) motion for his inconsequential grand jury appearance during the *Lee* investigation.

In all his *pro se* filings with this court, McDowell had never alleged that the promised Rule 35(b) motion was for a specified sentencing reduction. As the government points out, not until he filed his appellate brief in January 2005, more than six years after the purported promise, did he claim a right to a motion for a 25% sentencing reduction in this case. In his affidavit and during cross-examination at the hearing, McDowell claimed that Special Agent Bump and a different Central District of Illinois prosecutor, AUSA Allegro (not AUSA Westphal), specifically promised him a motion for a 25% sentencing reduction during a brief interview just minutes before he was called into the grand jury. McDowell Aff., GX 29 at ¶ 17; Tr. at 77:5-22. McDowell further testified

3

that Special Agent Bump previously promised a Rule 35(b) motion during a telephone conversation arranging his grand jury appearance and during several subsequent telephone conversations five years later in 2004. GX 29 at ¶¶ 13-14, 21-22. In addition, he claimed he was promised that the government would correct a purported error in the record concerning his relationship with the Gangster Disciples street gang.[1] *Id.* at ¶ 13.

Both Special Agent Bump and AUSA Allegro firmly denied ever promising McDowell a Rule 35(b) motion or to "clarify" his connection with the Gangster Disciples. Allegro Aff., GX 1 at ¶¶ 5, 9; Bump Aff., GX 8 at ¶¶ 4, 7. Neither witness could remember details of their limited conversations with McDowell in 1998, and as to Special Agent Bump also in 2004. That is not surprising, given the fact that McDowell's information was not pertinent to the drug conspiracy ultimately charged in the *Lee* case, the short duration of their meetings, and the intervening lapse of time. GX 1 at ¶¶ 13-17; AUSA Allegro's June 7, 2004 E-Mail, GX 5 at 1.

Special Agent Bump testified that he would not have promised McDowell a Rule 35(b) motion because he has no authority to make such promises; that decision is the sole prerogative of the AUSA handling the case. GX 8 at ¶ 4. His testimony was credible, reasonable, and consistent with the principle that a law enforcement officer cannot make a binding promise obligating a prosecutor to file a Rule 35(b) motion unless the prosecutor has authorized the promise. *See, e.g.,*

---

[1] McDowell was a major drug supplier for the Gangster Disciples. He sold kilogram quantities of cocaine to gang leaders and was in a position to provide inside information to law enforcement officers investigating the gang's leadership. *See, e.g.,* Presentence Investigation Report, Government's Version of the Offense at 1-2 (Dkt. No. 61 (Nov. 6, 1994) (under seal)); Defendant's Exhibit ("DX") 2 at ¶ 6. It may reasonably be inferred that McDowell had long, close, and trusted relationships with high-ranking Gangster Disciples. The record did not establish that McDowell himself was either a Gangster Disciples leader or member.

4

*United States v. Fuzer*, 18 F.3d 517, 521 (7th Cir. 1994) (federal agents cannot make binding promises without authorization of the United States Attorney); *United States v. Lua*, 990 F. Supp. 704, 713-14 (N.D. Iowa 1998) (rejecting defendant's claim of his cooperation agreement with "federal law enforcement agents [because they] do not have authority to offer cooperation or plea agreements to defendant[]") (citing cases).

AUSA Allegro also could not recall the details of his brief contact with McDowell in 1998. GX 1 at ¶ 5. But he was certain that he did not promise McDowell a Rule 35(b) motion or to intervene with this court concerning McDowell's gang relationships. *Id.* The reasons for AUSA Allegro's certainty are credible and sound: McDowell's information pre-dated the time period that was the subject of the grand jury investigation and indictment; McDowell did not provide the government substantial assistance in the *Lee* case, so there was no basis for a Rule 35(b) motion; six other witnesses provided the information that resulted in the *Lee* indictment; McDowell was not a credible witness and his information was uncorroborated; and AUSA Allegro did not have specific information about this case. *E.g., id.* at ¶¶ 6-17; GX 5 at 1; Tr. at 104:24-105:8, 108:22-23.

The court finds McDowell's affidavit and testimony incredible. In reaching this conclusion, the court has considered McDowell's argumentative courtroom demeanor; his background as a sophisticated drug dealer who regularly negotiated sales of kilogram quantities of cocaine to high-ranking Gangster Disciples; his record of deception and manipulation while he was cooperating with law enforcement authorities; his evasive responses and impeachment with prior inconsistent statements during cross-examination; the nature and circumstances of his limited role during the *Lee* grand jury investigation; the fact that the charges subsequently brought against Lee were not based on any transactions with McDowell; the improbable and extraordinary nature of the alleged

unconditional promise; and the undisputed fact that McDowell long ago compromised his usefulness as a trial witness by framing a gang member and by deceiving law enforcement authorities while he was a cooperating government witness. *E.g.*, GX 5 at 1; GX 29 at ¶ 5; DX 2 at ¶ 6; Tr. 14:7-16:6.

In addition, McDowell's affidavit and hearing testimony were unreliable and untrustworthy because he varied significantly from his earlier statements and pleadings. *See, e.g.*, GX 2-4 (McDowell's letters to AUSAs Westphal and Allegro fail to mention the existence of a promise for a Rule 35(b) motion, much less a 25% sentencing reduction, or any promise to advocate on his behalf with this court regarding his relationship with the Gangster Disciples). In fact, in one letter McDowell expressly acknowledged he did not have any agreement with the United States Attorney's Office for the Central District when he was interviewed and testified before the grand jury. GX 2 at 1. Rather, these letters show McDowell was attempting to persuade the AUSAs in the Central District to file a Rule 35(b) motion. This is also apparent from a letter written to AUSA Westphal of the Central District in 2004 by attorney Phil Turner on McDowell's behalf. GX 31 at 1 ("we are attempting to determine if Mr. McDowell can obtain any favorable action on the sentence he is serving as a result of his assistance to the government in your district"). Turner did not mention any promise or agreement to file a Rule 35(b) motion.

Turner also contacted AUSA Pasqual of the Northern District of Illinois, who attested and testified at the hearing that Turner was seeking Rule 35 consideration. Pasqual Aff., GX 6 at ¶ 4. Turner did not tell AUSA Pasqual that there was any promise or agreement between McDowell and the United States Atttorney's Office for the Central District to file a Rule 35(b) motion in this case. Tr. at 143:2-11. McDowell's claimed promise of a Rule 35(b) motion reducing his sentence by 25%, if known by Turner, would have been highly relevant to Turner's inquiry and advocacy on

6

McDowell's behalf. The court finds Pasqual's testimony truthful and reliable, and infers that Turner, McDowell's own attorney, did not know about the purported Rule 35(b) promise.

The court is persuaded that the testimony and affidavits of Special Agent Bump and AUSA Allegro are truthful and reliable as well. These witnesses attested and testified that McDowell was told AUSA Allegro would recommend a Rule 35(b) motion if McDowell's information proved useful. GX 1 at ¶¶ 4-5; GX 8 at ¶ 4. No promises were made. McDowell's information was not used in the prosecution against Lee. GX 1 at ¶¶ 13-17; GX 5 at 1. There is no basis in the record to support McDowell's bald assertion that his testimony was the foundation of the *Lee* prosecution. Lee was indicted for drug trafficking in 1995, a year after McDowell testified he stopped dealing with Lee, and while McDowell was incarcerated in this case. GX 1 at ¶¶ 13-17; GX 12 at 8:6-12. Rather, the record reflects that McDowell did not provide substantial assistance to authorities in the *Lee* case. *E.g.*, GX 5 at 1. AUSA Allegro's decision not to recommend a Rule 35(b) motion in this case was reasonable and warranted. There is no credible evidence to support McDowell's allegation that the government acted arbitrarily or in bad faith in refusing to seek an unwarranted reduction of his sentence. In sum, the government had a sound basis for not filing a Rule 35(b) motion.

## II. Lack of Authority

In its remand order, the Seventh Circuit noted the government did not "contend [on appeal] that prosecutors in the Northern District were not obligated or willing to follow through on a promise made by an AUSA for the Central District." *McDowell*, 149 Fed. Appx. at 512. The Seventh Circuit called the parties' attention to *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992) (unambiguous plea agreement between the District of Colorado and defendant was not binding on

prosecutors in other districts). However, on remand the government has raised the lack of authority for the purported Rule 35(b) motion as an alternative basis for denying McDowell's motion to compel. The government's position is sound.

Even if Special Agent Bump and AUSA Allegro promised McDowell a Rule 35(b) motion in this case, they would have no authority to do so and the purported promise would be unenforceable. A United States Attorney has sole authority to bind his own office. *See* 28 U.S.C. § 547 ("each United States attorney, *within his district*, shall . . . prosecute all offenses against the United States") (emphasis supplied). An AUSA may bind the government to file a Rule 35(b) motion to reduce a sentence imposed in another district only if his counterpart in the affected district consents. *United States v. Friedland*, 83 F.3d 1531, 1539-40 (3d Cir. 1996) (United States Attorney in New York "could not bind the government to make a motion to reduce [a] District of New Jersey sentence"); *United States v. Crobarger*, No. 04-4264, 158 Fed. Appx. 100, 107 (10th Cir. Dec. 7, 2005) (unpublished), *cert. denied*, 126 S. Ct. 1632 (Mar. 27, 2006) (AUSAs in the District of Colorado lacked authority to obligate the United States Attorney for the District of Utah to file a Rule 35(b) motion).

McDowell relies on two distinguishable cases: *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980), and *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1972). *Auten* and *Deutsch* hold that for discovery purposes, various federal agencies represent the government as a whole. *Auten*, 632 F.2d at 481; *Deutsch*, 475 F.2d at 57. These decisions are inapplicable because neither addresses the authority of United States Attorneys outside their districts in the context of Rule 35(b). McDowell's argument ignores the geographical boundaries limiting the authority of United States Attorneys. His argument must therefore be rejected.

## III. The Futility of a Rule 35(b) Motion

Rule 35(b) authorizes the government to move for a sentencing reduction if "the defendant, after sentencing, provided *substantial assistance* in investigating or prosecuting another person." Fed. R. Crim. P. 35(b) (emphasis supplied). The government does not dispute that a Rule 35(b) motion would be timely under the circumstances.

Even assuming *arguendo* that McDowell was unconditionally promised a Rule 35(b) motion to reduce his sentence by 25% and that the United States Attorney for the Northern District of Illinois was bound by a promise purportedly made by a federal prosecutor in another district, this court would be required to independently evaluate whether McDowell provided substantial assistance to the authorities in the *Lee* investigation and prosecution. *See id.* McDowell provided information that Lee delivered drugs for, and bought drugs from, McDowell from the late 1980's until 1994. GX 12 at 6:1-9, 8:10-12. McDowell's grand jury appearance was brief. His information was limited, dated, and unremarkable. His testimony consists of 15 pages, not all pertaining to Lee's drug activities. He provided no information about Lee's drug activities in 1995, during the time frame of the prosecution. His only "assistance" consisted of several short, preliminary conversations with Special Agent Bump, a brief meeting with AUSA Allegro, and his unremarkable grand jury testimony. GX 8 at ¶¶ 3-14; GX 9 at 1-8. AUSA Allegro considered McDowell an unreliable witness and his uncorroborated information was not used by the government in Lee's indictment, prosecution, or sentencing. GX 1 at ¶¶ 9, 11, 12, 15; GX 5 at 1.

McDowell's assistance was far short of substantial. On this record, a Rule 35(b) motion would conclusively lack merit.

9

## CONCLUSION

McDowell's motion to compel the government to file a Rule 35(b) motion is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

July 6, 2006